UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-11557-RGS

ALLIED ELEVATOR GROUP INC. and
RONALD TREMBLAY

v.

3PHASE ELEVATOR CORP.

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO DISMISS AND FOR JUGMENT ON THE PLEADINGS

October 20, 2020

STEARNS, D.J.

Ronald Tremblay sold his elevator service and repair company, Allied

Elevator Group Inc., to defendant 3Phase Elevator Corp. (3Phase).  Under

the terms of the Asset Purchase Agreement (APA), 3Phase retained Tremblay

as a Service Adjuster.  In his new status as an employee, Tremblay became a

member of the International Union of Elevator Constructors (IUEC) Local 4,

which had negotiated a collective bargaining agreement (CBA) with the

Elevator Contractors of America, a joint employer group that included

3Phase.

In November of 2019, 3Phase fired Tremblay, allegedly for poor job

performance. In May of 2020, Tremblay filed this lawsuit in the Essex

Superior Court.  On August 18, 2020, 3Phase removed the lawsuit to this court on federal question grounds, 28 U.S.C. § 1331.[1]

3Phase now moves to dismiss Count III – unfair and deceptive business practices, and Count IV – wrongful termination of the Complaint and asks for judgment on the pleadings with respect to Count I – breach of contract, and Count II – unjust enrichment. For the following reasons, 3Phase's motion will be allowed in part and denied in part.

## Background

The facts viewed in the light most plausibly favorable to Tremblay as the nonmoving party are as follows. Tremblay owned and operated Allied Elevator Group Inc, a company offering elevator repair, maintenance, and inspection services.  Tremblay sold his company to 3Phase in August of 2018. Under the governing APA, 3Phase retained Tremblay as a Service Adjuster

---

[1] All claims set out in Tremblay's state court complaint purport to arise under state law, and under the well-pleaded complaint rule, removal would ordinarily be barred. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 9-11 (1983).  There is an exception where a defense is based on "complete preemption," as is the case here where defendant asserts that all of Tremblay's common-law and state statutory claims are preempted by Section 301 of the Labor Management Relations Act (LMRA).  *See Cavallaro v. UMass Mem. Healthcare, Inc.*, 678 F.3d 1, 3-5 (1st Cir. 2012) (noting that as the doctrine has evolved "complete" preemption has become something less than the term implies).

and agreed to pay him over time an aggregate sum of $3,500,000.00. The amount agreed to at the closing included certain retention guarantees, a "Holdback Amount" of $140,000, a "Retention Amount" of $300,000, and a "Stock Amount" of $100,000.

The Holdback Amount was to be paid to Tremblay on the 18-month anniversary of the closing date (minus the value of any losses). The Retention Amount was to be paid in three installments, each within 30 days of the end of calendar years 2019, 2020, and 2021.[2] The Retention Amount payments, however, were conditioned on Tremblay's continued employment in good standing at 3Phase.[3]

As a Service Adjuster, Tremblay belonged to IUEC Local 4. The IEUC negotiated a CBA with the Elevator Contractors of America, to which (as previously noted) 3Phase belonged. The life span of the current CBA runs from July 9, 2017, until July 8, 2022, and was in effect at all times during Tremblay's employment at 3Phase. On July 24, 2019, 3Phase sent a Warning Letter under Article XXII Paragraph 5(e) of the CBA informing Tremblay

---

[2] The Stock Amount retention is not a matter in dispute.

[3] While not specified in the APA, it is reasonable to infer from the Retention Amount payment schedule that Tremblay was expected to remain at 3Phase until at least the end of 2021.

that he was no longer an employee in good standing, principally because of his refusal to drive a company-owned vehicle.[4]  In response, Tremblay met on August 13, 2019, with two IUEC representatives, Steve Sears and Steven Bruno.  They assured Tremblay that the IUEC would reject any claim of unsatisfactory work performance leveled against Tremblay.  On November 15, 2019, 3Phase fired Tremblay.  Tremblay then sued.

## DISCUSSION

### *Standards of Review:*

To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 555 (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

Fed. R. of Civ. P. 12(c) permits a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed," so long as the motion

---

[4] Tremblay claims that 3Phase was made aware that he intended to continue driving his personal vehicle while at his job. 3Phase denies it.

does not delay the trial.   A Rule 12(c) motion differs from a Rule 12(b)(6) motion in that it takes a holistic approach to the pleadings.   "In the archetypical case, the fate of such a motion will depend upon whether the pleadings, taken as a whole, reveal any potential dispute about one or more of the material facts."   *Gulf Coast Bank & Trust Co. v. Reder*, 355 F.3d 35, 38 (1st Cir. 2004).   "In reviewing a motion under Rule 12(c), as in reviewing a Rule 12(b)(6) motion, [a court] may consider 'documents the authenticity of which are not disputed by the parties; . . . documents central to the plaintiff's claim; [and] documents sufficiently referred to in the complaint.'"   *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007).

### Counts III and IV:

3Phase argues that both Counts III and IV are preempted by Section 301 of the LMRA.   Section 301 "completely preempts a state law claim if the resolution of the claim necessitates analysis of, or substantially depends on the meaning of, a collective bargaining agreement."   *Quesnel v. Prudential Ins. Co.*, 66 F.3d 8, 10 (1st Cir. 1995).   Here the existence of the CBA and the fact that Tremblay falls under it are not in dispute.   What is in dispute is whether resort must be had to the CBA in deciding Tremblay's claims of wrongful termination and deceptive practices on the part of 3Phase.

The CBA required an employer (3Phase) to provide a written warning to an employee (Tremblay) before initiating termination so as to give him an opportunity to "improve his work performance." Dkt. # 1-2.  The warning that Tremblay received recited only his resistance to driving a company vehicle as a ground for termination, while the termination letter itself recited numerous other examples of what 3Phase deemed to be instances of Tremblay's deficient job performance. Whether the initial written warning was sufficient to support Tremblay's subsequent termination would of necessity require an interpretation of the CBA.  Thus, Count IV (wrongful termination) is preempted by Section 301 of the LMRA and must be dismissed.

While the Count III Chapter 93A allegations involving 3Phase's objection to Tremblay's use of his personal vehicle appear to lie outside the provisions of the CBA, the Count is unstainable as a matter of Massachusetts law.  It is long settled that an employee may not assert Chapter 93A violations against his employer for alleged wrongs arising out of the employment relationship. *Manning v. Zuckerman*, 388 Mass. 8, 12 (1983).[5]  *See also*

---

[5] "[O]ur society already protects an employee's right to bargain collectively with his employer over the terms and conditions of employment, National Labor Relations Act, 29 U.S.C. § 157 (1976) (originally enacted as Act of July 5, 1935, ch. 372, 49 Stat. 449); G.L. c. 150A, § 3; and it requires

*Informix, Inc. v. Rennell*, 41 Mass. App. Ct. 161, 163 (1996) (there is no requirement that the employment relationship be ongoing). [6] Consequently, Count III will be dismissed under its own weight.

### Counts I and II:

As for Counts I and II, 3Phase implicitly acknowledges that Section 301 preemption does not apply and moves instead for judgment on the pleadings. In addressing Count I, 3Phase accurately observes that Tremblay's allegation that it failed to make timely installment payments on the "Holdback Amount" has that account confused with 3Phase's obligations under the "Retention Amount." Under the terms of the APA, the Retention Amount payments were due "in three installments on the first, second, and third anniversary of the Closing Date so long as Plaintiff was still employed in good standing with Defendant." Dkt. # 1-1. Rightly or wrongly, Tremblay was no longer an employee in good standing as of November of 2019. Consequently, under the contract no payments were due on any strict reading of the contract.

---

that hirings and discharges will be performed without discrimination. G.L. c. 151B, § 4." *Manning*, 388 Mass. at 12.

[6] The *Manning* rule applies with equal force to the claims of defamation raised in Tremblay's opposition (but not in his Complaint).

On the other hand, Tremblay's allegations that 3Phase acted in bad faith in refusing to honor the terms of the contract and in denying its enforceability to escape its obligation to make the Retention Amount payments, *see* Compl. ¶¶ 19-22, raises an issue of material fact (state of mind) to which the preemption doctrine does not apply.  Complete preemption is not without limitation.  *Fant v. New Eng. Power Serv. Co.*, 239 F.3d 8, 15 (1st Cir. 2001).  "State law claims requiring only consultation with the CBA, versus actual interpretation, should not be extinguished."  *Adames v. Exec. Airlines, Inc.*, 258 F.3d 7, 12 (1st Cir. 2001).

Section 301 does not preempt *nonnegotiable* rights conferred on individual employees as a matter of state law.  *See Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994) (emphasis added).  "The [Supreme] Court has cautioned that 'purely factual questions about an employee's conduct or an employer's conduct and motives do not require a court to interpret any term of a collective-bargaining agreement.'" *Flibotte v. Pennsylvania Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997), quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261 (1994).  That is the case here, and where intent, motive, state of mind, or lack of good faith, is at issue, brevis judgment will seldom lie.  *Ourfalian v. Aro Mfg. Co.*, 31 Mass. App. Ct. 294, 295 n.3 (1991); *Front Row Seating, Inc. v. New Eng. Concerts, Ltd.*, 33 Mass. App. Ct. 945,

947 (1992).   Such is the case here.   Under the circumstances, the more prudent course is to remand Counts I and II to the state court for resolution. *See Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998) ("[T]he balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation.").[7]

### ORDER

For the foregoing reasons, defendant's motion to dismiss Counts III and IV is <u>ALLOWED</u>.   The motion for judgment on the pleadings on Counts I and II is <u>DENIED</u>.  The Clerk will enter judgment for 3Phase on Counts III and IV and remand Counts I and II to the Essex Superior Court.

SO ORDERED.

s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[7] While this is a matter for the state court, I note that Count II, the claim for unjust enrichment, cannot ordinarily coexist with the Count I contract claim.  "[A] claim of unjust enrichment . . . will not lie 'where there is a valid contract that defines the obligations of the parties.'" *Chang v. Winklevoss*, 95 Mass. App. Ct. 202, 210-211 (2019), quoting *Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 641 (2013).